SALINA E. NEWTON *vs.* GEORGE W. VAN DUSEN and others.

December 7, 1891.

*A certain contract construed.*

Action brought in the district court for Olmsted county, for an accounting of all moneys and property received and expended by defendants Geo. W. Van Dusen and Charles H. Chadbourn under the contracts of December 20, 1881, considered in the opinion, and for leave to redeem the stock in the defendant, the Silver Bell Mining Company, transferred to Van Dusen & Chadbourn pursuant to those contracts. The action was removed for trial to Hennepin county, and there tried by *Lochren,* J., who ordered judgment allowing plain-

tiff to redeem 1,380 shares of the stock of the company, by paying, within 90 days, to Van Dusen & Chadbourn, the sum of $33,193, and that if she should fail to make such payment, she be foreclosed of all right or equity in the stock, the title thereto being confirmed in Van Dusen & Chadbourn. Judgment was entered accordingly, and plaintiff appealed.

*Chas. C. Willson*, for appellant.

*R. H. Gove* and *Wilson & Van Derlip*, for respondents.

MITCHELL, J. There was absolutely no conflict in the evidence in this case, and it fully justified all the findings of fact unless upon the single, and, as we think, immaterial, point as to the date of the delivery of the conveyance of the "mining claim" to the defendant corporation. The rights of the parties are wholly dependent upon the agreement and supplemental agreement of December 20, 1881, set out in the complaint; and all that preceded is relevant and important only for the purpose of aiding in the construction of that contract by showing the relations of the parties to each other and to the property at the time of its execution. Read in the light of the facts disclosed by the evidence and found by the court, the meaning and general scope of this contract are quite plain, although, having been drawn by the parties themselves, their intention is not always aptly expressed. Van Dusen & Chadbourn had elected not to complete the purchase of one-half of the mining claim under the contract of February 11, 1881, and consequently had the right, or at least were evidently supposed to have the right, to the possession of the mine for the purpose of reimbursing themselves for what they had expended and invested in it. The mine was practically undeveloped. Work on it had been abandoned by the defendant Newton. There were debts to the amount of $5,000 which were liens upon it, and upon which it was in danger of being sold. The Newtons had no means with which to pay their share of these debts. In this emergency all parties in interest united in entering into the agreement of December 20th, by which Van Dusen & Chadbourn were to advance the money necessary to pay off these debts, and all the stock of the corporation, when issued, was to be transferred to them, and the possession and control of the property turned over to

them, with the most plenary power to develop, work, or lease the mine, including the power to sell stock of the corporation to raise money for certain purposes; the Newtons, however, having the right, at their election, at any time before June 1, 1884, upon payment of all the moneys that Van Dusen & Chadbourn had theretofore or might thereafter expend on the property, including the $14,000 they had paid Robert A. Newton under the contract of February 11th, with interest at 10 per cent., to have all the unsold stock assigned to them; that is, the entire stock of the corporation not sold or disposed of by Van Dusen & Chadbourn for the purposes specified in the contract.

There is no basis whatever for the proposition that this agreement contained two separable contracts, one of pledge by the Newtons of their own stock as security for future advances or expenditures by Van Dusen & Chadbourn, and another for the purchase of their half of the stock. There was but one act to be performed on each side in case the Newtons exercised their option, viz., the payment by the Newtons of all the money expended or invested by Van Dusen & Chadbourn in the mine, including the $14,000, and the transfer by the latter to the former of the whole stock of the corporation remaining unsold. In short, the contract evidently contemplated a transfer of the whole property to Van Dusen & Chadbourn, with an option on part of the Newtons, within a specified time, to take it back upon payment to the former of the entire amount of money they had put into the enterprise, and that, if the Newtons did not exercise this option, all their rights in the property would be terminated. Whether the relation of the parties was that of pledgor and pledgee, or whether the Newtons had a mere option to buy, which had to be exercised strictly within the time limited by the terms of the contract, may admit of argument. The trial court adopted the construction first suggested, and held that, in the absence of any notice or demand by either party at a time fixed by the terms of the contract, there was an implied extension of time for its performance until determined and ended by some notice, demand, or act having that effect. This was the view most favorable to the plaintiff, for

it kept the contract on foot up to the commencement of this action, in 1890, nearly six years after the expiration of the time named in the instrument; and if the contract was kept on foot for the benefit of the plaintiff, so as to enable her to exercise her option, it would seem self-evident that it was also kept on foot in favor of Van Dusen & Chadbourn, so as to entitle them to bring into the account expenditures made in developing and working the mine subsequent to June 1, 1884, as well as those made prior to that date. This was the theory upon which the trial court proceeded in taking the accounting to ascertain how much plaintiff should pay in order to entitle her to a transfer of the stock remaining unsold. In this the court followed the exact line upon which the plaintiff's complaint was originally framed, and upon which the trial proceeded almost to its close.

But the plaintiff now claims that Van Dusen & Chadbourn were guilty of certain acts of omission and commission which amounted to a repudiation of the contract on their part, and which give her a right to rescind, so far as related to what she terms the purchase of Van Dusen & Chadbourn's half of the stock, and to redeem what she calls her own half, by paying one half of the expenditures made by them in working or developing the mine up to June 1, 1884, less one-half of the rental value of the mine since that date. The line of reasoning by which she assumes thus to divide the agreement into two separate contracts, and also eliminate from the accounting all disbursements made in operating the mine since June 1, 1884, is, to say the least of it, rather difficult to be understood.

The first act on part of Van Dusen & Chadbourn which is claimed to amount to a repudiation of the contract is their omission on June 1, 1884, to present to the Newtons a statement of receipts and expenditures, and tender an assignment of the stock. It is not pretended that the Newtons ever demanded any such thing, or ever gave any notice of their election to exercise their option. Van Dusen & Chadbourn had no claim against the Newtons, and no right to make any demand of any sort on them, and, unless and until the Newtons gave notice of their election, there was absolutely nothing for

Van Dusen & Chadbourn to do. They were only required to render an account in case the Newtons called for it, accompanied with notice of their election to pay up and take the stock.

Another act on part of Van Dusen & Chadbourn, relied on as a repudiation of the contract on their part, is their arrangement in March, 1883, with one Field, an experienced and practical miner, to take charge of and superintend the development of the mine; and in consideration of his doing so they to pay him $75 per month in cash, and to transfer to him one-fourth of the stock of the corporation; but, in order to insure the faithful performance by Field of his part of the contract, the stock was not to be transferred to him until the expiration of two years. Field immediately entered upon his duties as superintendent, and has so continued ever since. The stock was transferred to him, in pursuance of this contract, in August, 1885. It is not claimed that this contract with Field was not made in good faith, or that it was not necessary to have a skilled miner as superintendent, or that his services were not worth all that was paid him, including the stock; but it is claimed that this was a sale of stock for a purpose not authorized by the contract of December 20, 1881, whereby Van Dusen & Chadbourn disabled themselves from performing on their part, and thus gave plaintiff the right to rescind so far as related to the purchase of Van Dusen & Chadbourn's half of the stock.

Even if it be conceded that the Field contract was unauthorized, we are far from admitting that any such consequences would follow as plaintiff claims. We are satisfied, however, that the trial court was right in holding that the transfer of the stock to Field was in payment, in part, of his contracted services, and fairly within the scope of the agreement of December 20th. Had Van Dusen & Chadbourn employed Field at a cash salary of say $300 per month, (the same being reasonable,) there could have been no doubt of their authority to sell stock in order to raise money with which to pay him. Nor could there have been any doubt of their authority to transfer stock to him in payment of an indebtedness for services already performed. But we can see no difference, in principle, between that and agreeing to give him stock for services contracted to be performed, and then transferring the stock to him after the services were performed. The

development of the mine was a mere speculative venture. Every dollar expended on it might be lost. Consequently it might have been very impolitic to incur large pecuniary liabilities in prosecuting the work. Moreover, the stock had no market value, and consequently to attempt to sell it would either have been futile, or else resulted in sacrificing it. Taking into consideration the nature and condition of the property which was the subject of the contract, and the plenary power given to Van Dusen & Chadbourn to develop it, we think that the bargain with Field was fairly within the provision authorizing them to dispose of, sell, and transfer stock upon such terms as they should deem best, "for the purpose of paying indebtedness."

The only other act complained of is that of Chadbourn's, in December, 1888, transferring to his wife and children certain shares of stock as Christmas gifts. It is not claimed that this was done with any fraudulent intent. Undoubtedly he honestly supposed that all of plaintiff's rights were forfeited years before. We fully concur with the trial court that, inasmuch as the donees still hold this stock, and Chadbourn can still control it, this matter is of no importance, and may be disregarded, provided he will secure a transfer of this stock to plaintiff in case she pays up.

In conclusion, we think that plaintiff's contention is as devoid of equity as it is unfounded in law. It was optional with her whether she would redeem or not. If the mine proved valuable, she could do so; but if it proved a failure, the loss would all fall on Chadbourn & Van Dusen. In the fall of 1883, she, or her father for her, sent a party to examine the mine. He made an unfavorable report. She evidently concluded that it would be inexpedient for her to put any more money into it, and let the 1st of June, 1884, pass without intimating to Van Dusen & Chadbourn that she intended or expected to exercise her option. She continued this silence for years, while the mine was unprofitable, and while Van Dusen & Chadbourn were expending money in trying to develop it, and only in 1890—almost six years after her option had expired, and after a pocket of paying ore had been struck which was supposed to prove that the mine was valuable—did she for the first time assert her right to exercise her option. Of the action of the court in holding the contract still on foot,

so as to enable her to recover back all the unsold stock upon paying what Van Dusen & Chadbourn are out of pocket, plaintiff has certainly nothing to complain.

Judgment affirmed.